IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **DAKTRONICS, INC.** § | | |
| § | | |
| Plaintiff, § | C.A. NO. 1:15-cv-2699 | |
| § | | |
| v. § | | |
| § | **JURY TRIAL DEMANDED** | |
| **SKYLINE PRODUCTS, INC.** § | | |
| § | | |
| Defendant. § | | |

**PLAINTIFF'S ORIGINAL COMPLAINT
AND REQUEST FOR DECLARATORY JUDGMENT**

This is an action under the United States Lanham Act (15 U.S.C. § 1125) for unfair competition and false advertising, an action for declaratory judgment of patent invalidity and non-infringement under the patent statute (35 U.S.C. § 101 et. seq.), and the Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-101) in which Daktronics, Inc. ("Daktronics") makes the following allegations against Skyline Products, Inc. ("Defendant" or "Skyline").

**I. PARTIES**

1.      Plaintiff Daktronics, Inc. is a corporation organized and existing under the laws of the State of South Dakota.  Daktronics maintains its principal place of business at 201 Daktronics Dr., Brookings, South Dakota 57006.  Daktronics designs and manufactures traffic management and highway notification signs and is one of the preeminent manufacturers and suppliers of such signs.  Daktronics' electronic signs are sold throughout the United States.

2.      Defendant Skyline Products, Inc. is a corporation organized and existing under the laws of the State of Colorado with its principal place of business at 2903 Delta Dr., Colorado Springs, Colorado 80910.  Skyline designs and manufactures traffic management and highway notification signs.  Skyline's electronic signs are sold throughout the United States, including

within the District of Colorado. Skyline may be served with process through its registered agent located at 2903 Delta Dr., Colorado Springs, Colorado 80910.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this lawsuit pursuant to the provisions of 28 U.S.C. §§ 1331, 1338(a) and (b), 1367, and 2201 because the action concerns Plaintiff's request for relief under the Lanham Act for false advertising and unfair competition and further request for declaratory relief as to patent invalidity and non-infringement of the Defendant's United States Patent No. 8,446,293.

4. The federal courts have exclusive subject matter jurisdiction over all cases arising under the patent laws. 28 U.S.C. § 1338(a). An action for patent infringement or one for a declaratory judgment that a patent is invalid, unenforceable, or not infringed arises under the patent laws. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874 (Fed. Cir. 1983). The federal courts also have subject matter jurisdiction based upon the existence of federal questions presented by the Lanham Act false advertising and unfair competition claims.

5. Plaintiff brings this claim for declaratory relief under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 seeking a declaratory judgment of invalidity and non-infringement of U.S. Patent No. 8,446,293[1] (hereafter the '293 patent) owned by Skyline, as well as false advertising and unfair competition.

6. Skyline's acts as set forth more fully in the facts below, expose Daktronics and its customers to threats of patent infringement and ensuing litigation arising out of Daktronics' sales and offers for sale of electronic signs such as Daktronics' offerings of its toll road signage products.

---

[1] A copy of the '293 patent is attached hereto as Exhibit A.

The threats are evident in Skyline's letter[2] announcing to the industry the existence and coverage of the '293 Patent, including that "traffic sign systems that utilize both a remote management station and a multi-sign controller" are covered by its '293 Patent. Skyline's broad and unsubstantiated statements regarding its '293 Patent have a chilling effect on Daktronics sales because Daktronics' customers wish to avoid any litigation related to the purchase of electronic products offered by Daktronics. Moreover, such customers have no desire to incur any additional costs occasioned by the following Skyline statement: "Given the nature of Skyline's patented and patent-pending technology, the agency or entity owning and/or operating the remote management station as part of such a traffic system needs a patent license from Skyline to use such system to avoid violating Skyline's patent rights. Skyline licenses its patented and patent-pending technology (e.g., U.S. Patent No. 8,446,293, etc.) in conjunction with the sale of its products and also separate from the sale of its products." Exhibit B.

7.   Skyline's letter threatens any company supplying the Illinois State Highway Authority (hereafter the "Authority") with traffic sign systems utilizing both a remote management station and a multi-sign controller. By virtue of its letter, Skyline threatens the Authority and the Authority's contractors with allegations of patent infringement of the '293 Patent and its "patent pending."[3] Thus, Skyline's letter attempts to alert an entire industry to a potential patent infringement suit, including Daktronics. Declaratory relief is necessary based on the existence of a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

---

[2] An excerpt of the letter is attached hereto as Exhibit B. Only an excerpt of the letter was made available to Daktronics.
[3] To be clear, Skyline has *no* right to exclude anyone under its "patent pending" inasmuch as any alleged rights do not arise until the patent application has been examined and allowed by the United States Patent Office.

8. Skyline's letter also attempts to interfere with the Authority's obligation to pay for signage provided by vendors such as Daktronics inasmuch as it makes clear that the allegation of patent infringement and the need for a license may serve to delay payment. Specifically, Skyline's letter states in part: "Regarding the ITS project by the Illinois State Toll Highway Authority (the "Tollway") for the Jane Addams Memorial Tollway (I-90), Volume II of the Specifications to the Contract Requirements for Contract I-15-4227R incorporates by reference the Tollway Supplemental Specifications to the Illinois Department of Transportation Standard Specifications for Road and Bridge Construction, issued March 2015. Section 107.05 (Patented Devices, Materials and Processes) of the March 2015 Specification states that if a contractor provides to the Tollway any design, device, material or process covered by a patent, the contractor 'shall provide for such use [of the design, device, material or process] by suitable agreement with the patentee or owner and shall indemnify and save harmless the Tollway from and against all claims for infringement.' Section 107.05 also states: 'The Contractor shall, *upon demand of the Tollway, furnish the Tollway with a copy of such agreement with the patentee or owner, and if such agreement is not furnished when demanded, then the Tollway may, if it so elects, withhold any and all payments to the Contractor until such agreement is furnished.*'" Exhibit B (emphasis added).

9. This Court has personal jurisdiction over the Defendant. Defendant is a registered corporation in the State of Colorado. Defendant conducts business within the State of Colorado, including offers for sale, sells, and advertises its products in the United States and the State of Colorado.

10. Venue is proper in the Western District of Louisiana under 28 U.S.C. §§ 1391 and 1400.

## III. FACTS

11.  The '293 Patent entitled "Traffic Sign System That Uses The National Transportation Communications For Intelligent Systems Protocol" issued on May 21, 2013 based on an application filed on October 8, 2009.  The inventors of the '293 Patent assigned their interests to Skyline in an assignment executed on October 1, 2009.

12.  The '293 Patent is a continuation-in-part of an application filed on November 6, 2006.

13.  In March of 2015, the Authority issued a request for a proposal ("RFP") for a project involving toll road signs and/or related equipment.

14.  Daktronics, along with other potential suppliers, responded to the Authority's RFP and provided quotations for equipment to bidding contractors.  In May 18, 2015, the Authority identified Meade Electric as the apparent low bidder and awarded the contract to Mead Electric upon approval via subsequent board meeting.

15.   During the same time period when Meade Electric was assessing bids from several sign suppliers, Skyline forwarded a letter purporting to notify the industry of the broad patent claim coverage of its U.S. Patent No. 8,446,293 ("the '293 Patent") for traffic sign systems utilizing both a remote management station and a multi-sign controller.  *See* Exhibit B (hereinafter referred to as the "industry-wide letter").  The letter urged any entities owning and/or operating such remote management stations as part of their traffic system to obtain a patent license from Skyline and noted that licenses to the '293 Patent are granted pursuant to sale of its products, as well as apart from the sale of its products). Specifically, Skyline's letter noted that:

> *"[g]iven the nature of Skyline's patented and patent-pending technology, the agency or entity owning and/or operating the remote management station as part of such a traffic system needs a patent license from Skyline to use such system to avoid violating Skyline's*

> *patent rights. Skyline licenses its patented and patent-pending technology (e.g., U.S. Patent No. 8,446,293, etc.) in conjunction with the sale of its products and also separate from the sale of its products."*

16. Skyline's industry-wide letter specifically referenced the Illinois State Toll Highway Authority project contemplated by the RFP, drawing attention to a specification providing that any contractor providing any device covered by a patent to the Ill Authority must have an agreement with the patentee and owner, and must also indemnify the Authority from any and all claims (based upon the Authority's requirements and specifications). The letter further noted a duty to provide the Authority with copies of such license agreements upon demand.

17. Following Skyline's industry-wide letter, the supplier that had initially won the bid then lost the bid to Skyline.

18. Skyline's industry-wide letter has created reluctance in the market to buy any non-Skyline dynamic message signs, effectively sealing the marketplace from any non-Skyline dynamic message signs that use a multi-sign control system including those of Daktronics.

## IV. CAUSES OF ACTION

### Count 1: Declaratory Judgment – Patent Invalidity of U.S. Patent No. 8,446,293

19. Daktronics refers to and incorporates all preceding paragraphs as though fully set forth herein.

20. 35 U.S.C. § 102(b) provides: A person shall be entitled to a patent unless – (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.[4]

---

[4] Since the '293 patent has an effective filing date before March 16, 2013 the old (pre-AIA 35 U.S.C. § 102(b)) applies.

21. The application that resulted in the grant of the '293 Patent was filed in contravention of 35 U.S.C. § 102(b) because it was filed more than one year after the invention was described in a printed publication or in public use or on sale in this country. The '293 Patent is invalid for failing to meet the requirements of one or more of the provisions of 35 U.S.C. §§ 102, 103 or 112.

22. Skyline has asserted that the '293 Patent is infringed by traffic sign systems utilizing both a remote management station and a multi-sign controller. Daktronics' sign systems are implicated by this allegation of infringement. To the extent that the '293 Patent covers Daktronics' products it is invalid inasmuch as the products were in commercial use in this and other countries more than one year before the earliest priority date.

23. Daktronics is in possession of prior art and evidence of prior use that renders the '293 patent invalid under 35 U.S.C. § 102 and § 103.

24. Daktronics asks this Court, pursuant to the declaratory judgment statute to declare and find the '293 patent invalid and not infringed.

### Count 2: False Advertising as to Patent Coverage and Validity

25. Daktronics refers to and incorporates all preceding paragraphs as though fully set forth herein.

26. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, provides (in pertinent part) that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or

>> geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

27. Skyline's industry-wide letter constitutes commercial advertising or promotion.

28. Through that letter, Skyline made a false and misleading description of fact or representation of fact in a commercial advertisement about all non-Skyline traffic sign system products, including those of Daktronics. Specifically, through its letter, Skyline denigrated the dynamic message sign products offered by Daktronics (and all other suppliers) by suggesting and stating that traffic sign system products utilizing both a remote management station and a multi-sign controller provided by non-Skyline suppliers were infringing products thereby making customers and potential customers, including the Illinois State Toll Highway Authority, potentially liable for patent infringement. While Skyline does own a patent, even if such patent is valid (which Daktronics denies) such patent does not broadly cover all traffic sign systems utilizing both a remote management station and a multi-sign controller that are offered commercially in the marketplace.

29. Skyline's statements falsely misrepresented the nature, characteristics, and/or qualities of Daktronics' traffic sign system products. The statements were intended to mislead or confuse consumers and direct them to Skyline's products.

30. Skyline's misrepresentations are material, in that they are likely to influence purchasing decisions and in fact have influenced the Authority's purchasing decision. Skyline's denigration of the products of its competitors, including Daktronics, was done for the purposes of achieving commercial and competitive advantage and constitutes false advertising and false promotion of Skyline's products.

31. The misrepresentations actually deceived or had the tendency to deceive a substantial segment of its audience. In connection with such representations, Skyline succeeded in promoting its own products over those of its own competitors, including Daktronics. The initial recipient to supply Meade Electric with dynamic message sign products for the Illinois State Toll Highway Authority RFP lost the bid following Skyline's letter.

32. Skyline placed the false or misleading statement in interstate commerce through its industry-wide letter.

33. Daktronics has been injured or is likely to be injured as a result of the misrepresentations, either by direct diversion of sales or by a lessening of goodwill associated with its products.

34. Use of the above-recited statements in commercial advertising or promotion constitutes false or misleading descriptions of fact or false or misleading representations of fact, which misrepresents the nature, characteristics, and/or qualities, of Defendant's goods and services and/or commercial activities.

35. False advertising is actionable under Section 43(a) of the Lanham Act by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a) As a consequence of Defendant's false advertising, Plaintiff has suffered monetary damages in an amount not yet determined, and Plaintiff will continue to suffer harm (including irreparable harm) in the future unless and until Defendant's false advertising is enjoined by this Court.

### Count 3:  False Advertising – Assertion of an Invalid Patent

36. Daktronics refers to and incorporates all preceding paragraphs as though fully set forth herein.

37. Skyline's '293 patent is invalid and Skyline either knew or should have known that the '293 patent was invalid.

38. In asserting to the industry at large that the sale and offer for sale of traffic sign system products utilizing both a remote management station and a multi-sign controller provided by non-Skyline suppliers were infringing products thereby making customers and potential customers, including the Illinois State Toll Highway Authority, potentially liable for patent infringement, Skyline made a false statement with the intent of misleading the consumer into believing that it had a protectable interest in an invalid patent.

39. Skyline's goal in advancing an invalid patent was to secure for itself any sales of electronic signs and to divert such sales from its competitors, including Daktronics.

40. Skyline's misrepresentations are material, in that they are likely to influence purchasing decisions and in fact have influenced the Authority's purchasing decision. Skyline's purpose in advancing a patent that it knew or should have known to be invalid was done for the purposes of achieving commercial and competitive advantage and constitutes false advertising and false promotion of Skyline's products.

41. The misrepresentations actually deceived or had the tendency to deceive a substantial segment of its audience. In connection with such representations, Skyline succeeded in promoting its own products over those of its own competitors, including Daktronics. The initial recipient to supply Meade Electric with dynamic message sign products for the Illinois State Toll lost the bid following Skyline's industry-wide letter.

42. Daktronics was injured and will continue to be injured by Skyline's advancement of a patent that Skyline knows or should have known is invalid. Skyline placed the false or misleading statement in interstate commerce through its industry-wide letter.

43. Daktronics has been injured or is likely to be injured as a result of the misrepresentations, either by direct diversion of sales or by a lessening of goodwill associated with its products.

44. Use of the above-recited statements in commercial advertising or promotion constitutes false or misleading descriptions of fact or false or misleading representations of fact, which misrepresents the nature, characteristics, and/or qualities, of Defendant's goods and services and/or commercial activities.

45. False advertising is actionable under Section 43(a) of the Lanham Act by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a) As a consequence of Defendant's false advertising, Plaintiff has suffered monetary damages in an amount not yet determined, and Plaintiff will continue to suffer harm (including irreparable harm) in the future unless and until Defendant's false advertising is enjoined by this Court.

## Count 4: Unfair Competition

46. Daktronics refers to and incorporates all preceding paragraphs as though fully set forth herein.

47. Defendant's acts constitute unfair competition and are misleading representations of fact.

48. Defendant's acts of unfair competition and misrepresentations have deceived and will continue to deceive the public, including customers and potential customers, causing damages to Daktronics and other injury to its goodwill and reputation and that of its products.

## Count 5: Violation of Colorado Consumer Protection Act (CCPA)

49. Daktronics refers to and incorporates all preceding paragraphs as though fully set forth herein.

50. Through the above acts, Skyline has engaged in an unfair or deceptive trade practice under Colo. Rev. Stat. § 6-1-101.

51. Skyline's statements contained in the letter directed to the industry at large, occurred in the course of its business and significantly impact the public as actual or potential consumers of its products.

52. Daktronics suffered injury in fact to a legally protected interest, caused by Skyline's statements.

## IV. JURY DEMAND

Daktronics hereby demands a trial by jury on all issues that are to be determined by a jury.

## V. PRAYER FOR RELIEF

Daktronics prays for the following relief:

A. A declaration that all claims of U.S. Patent No. 8,446,293 are invalid;

B. A declaration that U.S. Patent No. 8,446,293 is not infringed;

C. Damages in the amount permitted by statute;

D. A finding that this case is exceptional, entitling Daktronics to an award of attorneys' fees and enhanced damages under 35 U.S.C. § 285;

E. An injunction enjoining Defendant from misrepresenting the nature, characteristics, or qualities of their or Plaintiff's goods, services, or commercial activities;

F. An aware of its reasonable attorneys' fees;

G. An award of the costs of court; and

H. Any and all other relief as the Court deems just and equitable.

DATED: December 14, 2015            Respectfully submitted,

*/s/ J. David Cabello*
J. David Cabello
Blank Rome LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
Telephone: (713) 228-6601
Facsimile: (713) 228-6605
E-Mail: dcabello@blankrome.com

**ATTORNEY FOR PLAINTIFF DAKTRONICS, INC.**